**No. 25-2904**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

---

United States of America,
*Plaintiff–Appellant*,

v.

State of Illinois, *et al.*,
*Defendants–Appellees.*

---

On Appeal from the United States District Court
For the Northern District of Illinois, No. 1:25-cv-01285
Judge Lindsay C. Jenkins

---

**BRIEF FOR *AMICUS CURIAE*
FEDERATION FOR AMERICAN IMMIGRATION REFORM
IN SUPPORT OF PLAINTIFF–APPELLANT**

---

MATT A. CRAPO
*Counsel of Record*
CHRISTOPHER J. HAJEC
DENISE A. HINDS
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Ste 330
Washington, DC 2000
(202) 328-7004
mcrapo@fairus.org

Counsel for *Amicus Curiae*
Federation for American Immigration Reform

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>25-2904</u>
Short Caption: <u>United States v. State of Illinois, *et al*</u>.

    1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>Federation for American Immigration Reform</u>

    2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court: <u>Federation for American Immigration Reform</u>

    3)    If the party, amicus or intervenor is a corporation:

      i.    Identify all its parent corporations, if any; and
          <u>None</u>
     ii.    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
          <u>None</u>

    4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases: <u>N/A</u>

    5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2: <u>N/A</u>

Dated: January 29, 2026        <u>/s/  Matt Crapo</u>
                    MATT A. CRAPO
                    *Counsel of Record*
                    Federation for American Immigration Reform
                    25 Massachusetts Ave., NW, Suite 330
                    Washington, DC 20001
                    Tel: (202) 328-7004
                    Mobile: (571) 435-3582
                    Fax: (202) 387-3447
                    mcrapo@fairus.org

# TABLE OF CONTENTS

**Page(s)**

CORPORATE DISCLOSURE STATEMENT ..........................................................i

TABLE OF CONTENTS..........................................................................ii

TABLE OF AUTHORITIES .................................................................... iii

INTEREST OF *AMICUS CURIAE* ...........................................................1

SUMMARY OF ARGUMENT ................................................................1

ARGUMENT ....................................................................................2

I.    The TRUST Act is obstacle preempted......................................................2

II.   The TRUST Act makes obeying both federal and state law an impossibility ................................................................................11

CONCLUSION ..................................................................................14

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arizona v. United States*,
    567 U.S. 387 (2012)......................................................................4, 6

*City of Chicago v. Barr*,
    961 F.3d 882 (7th Cir. 2020) .........................................................9, 10

*City of Chicago v. Sessions*,
    888 F.3d 272 (7th Cir. 2018) ...............................................................9

*City of New York v. United States*,
    179 F.3d 29 (2d Cir. 1999) ..........................................................6, 7, 8

*Coalition for Competitive Electricity v. Zibelman*,
    906 F.3d 41 (2d Cir. 2018) .................................................................14

*Crosby v. Nat'l Foreign Trade Council*,
    530 U.S. 363 (2000).........................................................................4, 5

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
    505 U.S. 88 (1992).............................................................................4

*Harisiades v. Shaughnessy*,
    342 U.S. 580, 588-589 (1952) ............................................................5

*Hines v. Davidowitz*,
    312 U.S. 52 (1941).............................................................................5

*Lozano v. City of Hazleton*,
    724 F.3d 297 (3d Cir. 2013) ...............................................................4

*McHenry County v. Raoul*,
    44 F.4th 611 (7th Cir. 2022) ..........................................................9, 10

*National Foreign Trade Council v. Natsios*,
    181 F.3d 38 (1st Cir. 1999).................................................................5

*Oneok, Inc. v. Learjet, Inc.,*
  575 U.S. 373 (2015)............................................................................................14

*Savage v. Jones*,
  225 U.S. 501 (1912)..............................................................................................4

## STATUTES

5 Ill. Comp. Stat. § 805 ..........................................................................................2

5 Ill. Comp. Stat. § 805/15 .....................................................................................3

8 U.S.C. § 1101(a)(28).........................................................................................12

8 U.S.C. § 1101(b)(3)...........................................................................................12

8 U.S.C. § 1324..................................................................................11, 12, 13

8 U.S.C. § 1357(g) .................................................................................................8

8 U.S.C. § 1373.................................................................................................6, 7

8 U.S.C. § 1644......................................................................................................7

Secure Fence Act of 2006,
  Pub. L. No. 109-367, 120 Stat. 2638 ....................................................................9

Illegal Immigration Reform and Immigrant Responsibility Act of 1996,
  Pub. L. 104-208, 110 Stat. 3009 ..........................................................................6

Personal Responsibility and Work Opportunity Reconciliation Act of 1996,
  Pub. L. 104-193, 110 Stat. 2105 ..........................................................................7

U.S. Const. art. VI, cl. 2 .........................................................................................4

## OTHER AUTHORITIES

S. Rep. No. 104-249 (1996).....................................................................................7

H.R. Rep. No. 104-725 (1996).................................................................................8

## INTEREST OF *AMICUS CURIAE*[1]

*Amicus curiae* Federation for American Immigration Reform ("FAIR") is a nonprofit corporation and membership organization that was founded in 1979 and has its principal place of business in Washington, D.C. FAIR's mission is to advocate for immigration policy that is in America's best interest. FAIR has been involved in more than 100 legal cases since 1980, either as a party or *amicus curiae*, with the aim of advancing this mission.

## SUMMARY OF THE ARGUMENT

The TRUST Act impedes and interferes with federal immigration law enforcement in Illinois and was designed to do just that. Federal law encourages unimpeded communication among federal, state, and local governments in sharing immigration status information, as well as unobstructed cooperation in ascertaining the whereabouts of illegal aliens. The TRUST Act prohibits state and local officers from sharing the release dates of aliens, and their personal information, with U.S. Immigration and Customs Enforcement ("ICE"), and forbids such officers to transfer custody of aliens to ICE. In these prohibitions, Illinois compels local officers who would cooperate with federal immigration enforcement to refrain

---

[1]  All parties have consented to the filing of an *amicus* brief by the Federation for American Immigration Reform. Pursuant to Federal Rule of Appellate Procedure 29, *amicus curiae* states that no counsel for a party authored this brief in whole or in part and no person or entity, other than *amicus curiae*, its members, or its counsel, has funded its preparation or submission.

from doing so. By creating an obstacle to congressional purposes, the TRUST Act violates the Supremacy Clause of the U.S. Constitution.

This choking-off of cooperation that would otherwise take place is an obstacle both to the federal-state cooperation that Congress sought to facilitate and to immigration law enforcement itself. Indeed, by making Illinois a "sanctuary state," where illegal aliens and criminal aliens can expect less effective federal immigration law enforcement than in other states, the TRUST Act functions as a magnet for illegal aliens, thus frustrating Congress's declared purpose of achieving operational control of the border.

The TRUST Act is also conflict preempted in another way: because it commands local officials to commit the federal crime of harboring, it makes it impossible for them to obey both state and federal law. The TRUST Act's introduction of this logical conflict between local and federal law is a textbook violation of the Supremacy Clause.

## ARGUMENT

## I.     THE TRUST ACT IS OBSTACLE PREEMPTED.

The Illinois TRUST Act was passed in 2017 to prohibit Illinois state and local law enforcement from cooperating in the enforcement of federal immigration law. *Illinois Trust Act*, 5 Ill. Comp. Stat. § 805 *et seq*. The 2021 Way Forward Act further restricted such cooperation. Press Release, *Governor Pritzker Signs*

*Legislation to Strengthen the Illinois TRUST Act* (Mar. 12, 2021),

https://www.illinois.gov/news/press-release.23653.html (explaining that the "new

laws strengthen the TRUST Act and make Illinois the second state in the nation to

require local officials to end partnerships with ICE") (last visited Jan. 28, 2026).

As amended, the TRUST Act prohibits state, county, and local law enforcement

from "inquir[ing] about or investigat[ing] the citizenship or immigration status or

place of birth of any individual in the agency or official's custody or who has

otherwise been stopped or detained by the agency or official." 5 Ill. Comp. Stat.

§ 805/15(e). State officials may not provide federal immigration agents with the

release date or contact information of any alien held in state or local custody or

respond to any requests for such information from federal agents unless the agent

presents a federal criminal warrant. 5 Ill. Comp. Stat. § 805/15(h)(6)-(7).

The TRUST Act also forbids providing federal immigration officers access

to non-public facilities or electronic databases for civil immigration enforcement

purposes, 5 Ill. Comp. Stat. § 805/15(h)(5), and the transferring of individuals to

federal immigration custody absent a federal criminal warrant. 5 Ill. Comp. Stat.

§ 805/15(h)(3). Thus, under the Act, in many cases, if a federal immigration officer

asks when an alien in local custody will be released, or for that alien's home or

work address, local officials who otherwise would be perfectly willing to provide

that information may not provide it. And, in many cases, if a federal immigration

officer seeks to assume custody of an alien from local officials, local officials who otherwise would be perfectly willing to transfer custody may not do so.

The Supremacy Clause provides that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Under this clause, Congress has the power to preempt state and local laws. *Arizona v. United States*, 567 U.S. 387, 399 (2012) (citing *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000)).

Preemption may be either express or implied, and implied preemption includes both field preemption and conflict preemption. *Lozano v. City of Hazleton*, 724 F.3d 297, 302 (3d Cir. 2013) (citing *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992)). Conflict preemption can occur in one of two ways: where "compliance with both federal and state regulations is a physical impossibility," or "where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Lozano*, 724 F.3d at 303 (citing *Arizona*, 567 U.S. at 399) (internal quotation marks and citations omitted). "If the purpose of the act cannot otherwise be accomplished—if its operation within its chosen field else must be frustrated and its provisions be refused their natural effect—the state law must yield to the regulation of Congress within the sphere of its delegated power." *Savage v. Jones*,

225 U.S. 501, 533 (1912), *quoted in Hines v. Davidowitz*, 312 U.S. 52, 67 n.20 (1941).

The judgment of courts about what constitutes an unconstitutional impediment to federal law is "informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby*, 530 U.S. at 373. As pointed out by the First Circuit when opining on *Hines*, "[p]reemption will be more easily found where states legislate in areas traditionally reserved to the federal government, and in particular where state laws touch on foreign affairs." *National Foreign Trade Council v. Natsios,* 181 F.3d 38, 73 (1st Cir. 1999).[2]

Underlying the doctrine of obstacle preemption is the necessity of cooperation between state and federal sovereignties for our federal system to function properly. As the Second Circuit has explained:

> A system of dual sovereignties cannot work without informed, extensive, and cooperative interaction of a voluntary nature between sovereign systems for the mutual benefit of each system. The operation of dual sovereigns thus involves mutual dependencies as well as differing political and policy goals. Without the Constitution, each sovereign could, to a degree, hold the other hostage by selectively withholding voluntary cooperation as to a particular program(s). The potential for deadlock thus inheres in dual sovereignties, but the

---

[2]  Policies dealing with aliens not only invoke the Uniform Rule of Naturalization Clause of the Constitution but are also "interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government.  Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-589 (1952).

Constitution has resolved that problem in the Supremacy Clause, which bars states from taking actions that frustrate federal laws and regulatory schemes.

*City of New York v. United States*, 179 F.3d 29, 35 (2d Cir. 1999) (internal citations omitted) (holding 8 U.S.C. § 1373 constitutional).

By design, the TRUST Act frustrates the Immigration and Nationality Act ("INA") in two of its central purposes—not only the obvious purpose that immigration law be enforced, but the federal, state, and local cooperation Congress intended to foster in that enforcement. As the Supreme Court has recognized, "consultation between federal and state officials is an important feature of the immigration system." *Arizona*, 567 U.S. at 411. For example, in passing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), which includes 8 U.S.C. § 1373, Congress sought unimpeded communication among federal, state, and local governments in sharing immigration status information, as well as unobstructed cooperation in ascertaining the whereabouts of illegal aliens. IIRIRA, Pub. L. 104-208, 110 Stat. 3009 (1996). The Senate Judiciary Committee Report accompanying IIRIRA makes this general purpose clear:

> Effective immigration law enforcement requires a cooperative effort between all levels of government. The acquisition, maintenance, and exchange of immigration- related information by State and Local agencies is consistent with, and potentially of considerable assistance to, the Federal regulation of immigration and the achieving of the purposes and objectives of the Immigration and Nationality Act.

S. Rep. No. 104-249, at 19-20 (1996) (emphasis added), *quoted in City of New York*, 179 F.3d at 32-33. Thus, in drafting § 1373, Congress sought to foster a cooperative effort among local, state, and federal law enforcement in the enforcement of immigration law.

A review of additional federal immigration provisions further underscores this intent. Shortly before enacting IIRIRA, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. 104-193, 110 Stat. 2105 (1996) ("PRWORA"). Entitled "Communication between State and local government agencies and Immigration and Naturalization Service," section 434 of this law, now codified at 8 U.S.C. § 1644, is nearly identical to § 1373. *Id.* This provision of PRWORA forbids any prohibitions or restrictions on the ability of state or local governments to send to or receive from the federal government information about the immigration status, lawful or unlawful, of an alien in the United States. Going further than the Senate Judiciary Committee Report accompanying IIRIRA, in the Conference Report accompanying PRWORA, Congress made clear its intent in passing Section 434: to bar *any* restriction on local police in their communications with ICE, including about the *whereabouts* of illegal aliens, which obviously includes the time of their release from detention.

> The conference agreement provides that no State or local government entity shall prohibit, or in any way restrict, any entity or official from

sending to or receiving from the INS information regarding the immigration status of an alien or the presence, whereabouts, or activities of illegal aliens. It does not require, in and of itself, any government agency or law enforcement official to communicate with the INS.

The conferees intend to give State and local officials the authority to communicate with the INS regarding the presence, whereabouts, or activities of illegal aliens. This provision is designed to prevent any State or local law, ordinance, executive order, policy, constitutional provision, or decision of any Federal or State court that prohibits or in any way restricts any communication between State and local officials and the INS. The conferees believe that immigration law enforcement is as high a priority as other aspects of Federal law enforcement, and that illegal aliens do not have the right to remain in the United States undetected and unapprehended.

H.R. Rep. No. 104-725, at 383 (1996) (Conf. Rep.), *quoted in City of New York*, 179 F.3d at 32.

Another federal statute also has the purpose of fostering cooperation in immigration enforcement. In 8 U.S.C. § 1357(g), Congress made clear that no agreement is needed for state and local officers or employees "to communicate with [federal immigration authorities] regarding the immigration status of any individual, including reporting knowledge that a particular alien is not lawfully present in the United States." *Id.* § 1357(g)(10)(A). Likewise, Congress has refused to require any formal agreement for state and local officers or employees to "cooperate with [federal immigration authorities] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." *Id.* §1357(g)(10)(B).

The TRUST Act frustrates, and is intended to frustrate, federal enforcement of immigration law. By design, the TRUST Act keeps ICE in the dark about aliens' release dates and home and work addresses, sharply increasing the difficulty ICE has in accomplishing the congressional purposes of locating removable aliens and taking them into custody. Furthermore, because the TRUST Act, by its terms, mandates noncooperation with federal enforcement of immigration laws, it thwarts the congressional purposes of fostering such cooperation.

In addition, the TRUST Act undermines Congress's objective of obtaining "operational control" of the border, defined as "the prevention of all unlawful entries into the United States," not just by terrorists but by all illegal aliens. Secure Fence Act of 2006 § 2(b), Pub. L. No. 109-367, 120 Stat. 2638, 2638-39. By making Illinois a "sanctuary state," where illegal aliens who reach it can expect protection from federal immigration law enforcement, the TRUST Act functions as a magnet to illegal immigration itself, thus frustrating Congress's goal of operational control of the border.

The district court, in dismissing the government's case and thereby upholding the TRUST Act, improperly relied on two Seventh Circuit decisions: *McHenry County v. Raoul*, 44 F.4th 581 (7th Cir. 2022), and *City of Chicago v. Barr*, 961 F.3d 882 (7th Cir. 2020) (superseding *City of Chicago v. Sessions*, 888 F.3d 272 (7th Cir. 2018)). The district court's reliance on these precedents was

misplaced; those cases address a state's refusal to provide voluntary resources, not a state's authority to enact mandatory barriers that actively obstruct federal law. (SA41- SA50) (discussing *McHenry* and *City of Chicago* within the district court's preemption analysis).

The district court's application of *McHenry County* was incorrect because it conflated a state's right to decline to assist federal efforts with a claimed right affirmatively to interfere with them. *McHenry County* affirmed that states may passively withdraw their own facilities from federal use, making federal agents seek other resources. *See McHenry County*, 44 F.4th at 592 (explaining that the state may "remove its facilities from the list of options" available to the federal government). In contrast, the TRUST Act creates an affirmative obstacle to federal law by blocking the flow, which otherwise would exist in many cases, of essential custody information—such as release dates and home addresses—that federal officers need to carry out their statutory duties pursuant to the INA. By prohibiting cooperation even from local officials who would otherwise be "perfectly willing" to provide it, the Act represents an affirmative barrier rather than the passive non-cooperation addressed in *McHenry County*. (SA54-SA57).

While *City of Chicago v. Barr* addressed whether federal grant funding could be conditioned on state cooperation, the district court misinterpreted that case to endorse state laws that actively block such cooperation. *See* 961 F.3d at

10

916–17 (emphasizing that the "power of the purse" does not grant the Executive the authority to conscript state resources). That case recognized the limits of the federal spending power to mandate state assistance, but it did not grant states the power to frustrate federal enforcement by blocking communications. The TRUST Act's mandatory barriers are far more disruptive than the mere refusal to accept grant-based conditions considered in *City of Chicago*.

By thus standing as an obstacle to the central purposes of the INA, the TRUST Act plainly violates the Supremacy Clause.

## II. THE TRUST ACT MAKES OBEYING BOTH FEDERAL AND STATE LAW AN IMPOSSIBILITY.

An additional, equally plain basis for the government's broad claim of conflict preemption, *See* Appendix for Plaintiff-Appellant GA18-GA20, GA31-GA35] (Compl. ¶¶ 3-6, 58-72), is that the TRUST Act is conflict preempted because it commands officials to commit the federal crime of harboring.

What are generally referred to as the "anti-harboring" provisions of the INA—located at Title II, Chapter 8, § 274 and codified at 8 U.S.C. § 1324—read in pertinent part:

**Bringing in and Harboring Certain Aliens**

**(a) Criminal penalties.—**

(1)(A) Any person who—
…
(iii) knowing or in reckless disregard of the fact that an alien has come

to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation; . . .

(v) (I) engages in any conspiracy to commit any of the preceding acts, or (II) aids or abets the commission of any of the preceding acts, shall be punished as provided in subparagraph (B).

(B) A person who violates subparagraph (A) shall, for each alien in respect to whom such a violation occurs—

…

(ii) in the case of a violation of subparagraph (A)(ii), (iii), (iv), or (v)(II), be fined under title 18, United States Code, imprisoned not more than 5 years, or both . . . .

The INA defines "person" when used in Title II as "an individual or an organization." 8 U.S.C. § 1101(b)(3). "The term 'organization' means, but is not limited to, an organization, corporation, company, partnership, association, trust, foundation or fund; and includes a group of persons, whether or not incorporated, permanently or temporarily associated together with joint action on any subject or subjects." 8 U.S.C. § 1101(a)(28). Thus, § 1324 applies to municipal corporations and unincorporated areas alike, which, under the INA's sweeping definition, are organizations, and thus persons.

By preventing local law enforcement from providing the information or cooperation that ICE requests in the course of enforcing federal immigration laws, the TRUST Act compels local law enforcement to "conceal[], harbor[], or shield[] from detection" aliens in "any place, including any building" (or to attempt to do

so) in violation of 8 U.S.C. § 1324(a)(1)(a)(iii). For example, when ICE requests the release date of an alien from a local jail, and local authorities refuse to give that information to it, as mandated by the TRUST Act, the local authorities are thereafter "shielding" the alien's presence, and therefore the alien, "from detection" either in the jail (a "building") or outside the jail (a "place"), depending on the alien's location at any given moment. Also, if ICE requests the home address of a released alien, and local officials refuse to give it that information, as mandated by the TRUST Act, they are "conceal[ing]" the alien "in a[] building" at any time the alien is at that address. Or, if ICE agents arrive at a local jail to assume custody of an alien, and local authorities, as mandated by the policies, both refuse them entry and do not transfer custody outside of the jail, the local officials are "harbor[ing]" the alien "in . . . a[] building" while the alien remains in the jail, "harbor[ing]" the alien "in . . . a[] place" if they bring the alien outside the jail and there refuse to transfer custody, or concealing the alien "in a[] place" if they deliberately slip the alien out of the jail in a way that evades the agents' notice. Even if local law enforcement claims that receiving a Form I-247A (INS Immigration Detainer Notice of Action form notifying local law enforcement of an alien's removability)[3] from ICE does not give it the requisite knowledge of an

---

[3] Sample form available at
https://www.ice.gov/sites/default/files/documents/Document/2017/I-247A.pdf

alien's unlawful presence, the form includes a probable cause determination by the U.S. Department of Homeland Security that the alien is removable, thus at the very least making law enforcement's noncompliance in "reckless disregard" of the alien's unlawful presence.

Accordingly, the TRUST Act compels local law enforcement to violate the federal anti-harboring statute. In doing so, it makes obedience to both federal and state law an impossibility, and it is, therefore, conflict preempted. *E.g., Oneok, Inc. v. Learjet, Inc.,* 575 U.S. 373, 377 (2015); *Coalition for Competitive Electricity v. Zibelman*, 906 F.3d 41, 55 (2d Cir. 2018).

## CONCLUSION

For the foregoing reasons, the decision below should be reversed.

Dated: January 29, 2026                    Respectfully submitted,

/s/ Matt Crapo
MATT A. CRAPO
*Counsel of Record*
CHRISTOPHER J. HAJEC
DENISE A. HINDS
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Ste 330
Washington, DC 2000
(202) 328-7004
mcrapo@fairus.org

Counsel for *Amicus Curiae*
Federation for American Immigration Reform

14

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because this brief contains 3,279 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

3. This brief complies with the requirements of Circuit Rule 30(d) regarding the appendix, if applicable, and Circuit Rule 32(b), which requires that the brief be generated in a text-searchable PDF format.

Dated: January 29, 2026          Respectfully submitted,

                                 /s/ Matt Crapo

# CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2026, I electronically filed the foregoing amicus brief with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

s/ Matt Crapo